# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MARY MILLER,

    Plaintiff,

                                       Civil No. 99-646 M/WWD

KENNETH S. APFEL,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION
### Proposed Findings

    1. This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, filed January 14, 2000 **[docket # 7]**. The Commissioner denied Plaintiff's request for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits. At the time of the hearing, Plaintiff was 44 years old with a high school education, had completed two and a half years of college and has worked as a cook, shipping clerk, bartender and housekeeper.

    2. Plaintiff alleges a disability due to a back injury (degenerative disc disease and back pain), knee problems and carpal tunnel in her right wrist. She alleges an inability to work since January 7, 1996 on her application for SSDI and since March 26, 1995 on her application for SSI.

    3. The Commissioner denied Plaintiff's application for benefits. After conducting an

administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") likewise denied the applications, concluding that Plaintiff is able to perform a full range of sedentary work and therefore is not disabled. The Appeals Council denied Ms. Miller's request for review of the ALJ's decision, thus the ALJ's decision is the final decision of the Commissioner. Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

4. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

5. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson at 1486 (citing 42 U.S.C. §§423 (d)(1)(A) & 1382c(a)(3)(A)). Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted).

6. Plaintiff raises the following six allegations of error with respect to the ALJ's decision: (1) the ALJ applied an incorrect onset date to justify an incorrect decision; (2) the ALJ mischaracterized the issue and erred in his findings regarding claimant's severe impairments; (3) the ALJ failed to consider all of claimant's severe impairments; (4) the ALJ erred in adopting the

2

findings of Dr. Romanik, the DDS reviewer; (5) the ALJ erred in his assessment of the credibility of pain complaints; and (6) the ALJ erred in finding that claimant could perform a full range of sedentary work and in mechanically applying the medical/vocational guidelines ("grids") at § 201.28.

7. Ms. Miller sustained a work-related back injury in March 1995. She testified that she can sit or stand 30 minutes and walk 45 minutes. Her legs go numb, she has stabbing pain in her thighs and has constant back pain. Tr. at 61-62, 67. Plaintiff told the ALJ that she has migraine headaches once a month which last for 15 to 21 days and that she has blurry vision and floaters in her right eye and is blind in her left eye. Tr. at 63-64.[1]

8. Ms. Miller stated she needs to lie down every two hours at least twice a day. She has had surgery for bladder incontinence, which has improved her symptoms, even though she said she still needs to use the restroom frequently, about every half hour. Tr. at 65-66. Plaintiff said that she suffers from carpal tunnel syndrome. Tr. at 62, 67. She testified that she has lost concentration and that her children now help with household chores. Tr. at 67-68. Ms. Miller stated that the medications she is taking leave her feeling very sleepy and very irritable. Tr. at 68. Medical reports indicate that Plaintiff weighs 228 and is overweight.

9. The ALJ acknowledged that the objective medical facts show that Plaintiff has degenerative disc disease, mechanical low back pain, obesity, deconditioning and stress incontinence. He also acknowledged that Plaintiff could not return to her past relevant work, which involved light work. Nevertheless, he concluded that she was not disabled because there is

---

[1] The ALJ stated in his decision that Plaintiff was "blind in her right eye." Tr. at 47.

other work in the regional economy she can perform, viz., the full range of sedentary work. He also found that Plaintiff's pain is mild "and alleviated with medication and exercise." Tr. at 51.

**First Alleged Error**

10. Plaintiff alleges that the ALJ applied an incorrect onset date to justify an incorrect decision. She contends that the correct onset date is January 7, 1996 when she was forced to stop work altogether and not March 26, 1995, when her injury first occurred.

11. In this appeal, she argues that the ALJ's use of the March 1995 date resulted in his use of medical evidence from a period of time which was used as a basis for denying disability during a later period of time when Ms. Miller was unable to work. She further argues that using the earlier onset date meant that the ALJ improperly considered evidence that Ms. Miller could still work during a time when she was, in fact, still working (1995-96). See Tr. at 98.

12. A claimant's onset date is defined as "the first day an individual is disabled as defined in the Act and the regulations." SSR 83-20. Factors relevant to the determination are the claimant's allegation of an onset date, her work history and the medical evidence, with medical evidence being the primary element in determining onset date. Id.

13. Ruling 83-20 recognizes that a medical advisor should be consulted at the hearing where the medical evidence of onset is ambiguous. Reid v. Chater, 71 F.3d 372, 373 (10th Cir. 1995). This is not such a case, since it is not unclear when Plaintiff's impairments allegedly restricted her functional capacity. Cmp., Spellman v. Shalala, 1 F.3d 357, 362 (5th Cir. 1993).

14. Although at the hearing the ALJ alluded to January 1996 as the onset date, in his decision he referred to the "alleged onset date" as March 1995. Tr. at 58, 42. On her application

4

for SSDI, Plaintiff indicated that she became unable to work on January 7, 1996, but on her application for SSI, stated that her disability began on March 26, 1995. Tr. at 90, 320.

15. An individual's allegation or the date of work stoppage is significant in determining onset "only if it is consistent with the severity of the condition(s) shown by the medical evidence." SSR 82-39 (Policy Statement). In this case, Ms. Miller's allegation of January 1996 as an onset date is consistent with the medical evidence, even the reports that were generated prior to that time.[2] This latter evidence is nevertheless relevant to Plaintiff's claim for benefits, since it does not contradict the medical evidence subsequent to January 1996. See, e.g., Webster v. Chater, (Table, text in Westlaw), 1996 WL 494315 (10th Cir. Okla.). Plaintiff herself relies on this prior evidence in her brief as evidence of her disability. See, e.g., Mem. at 13. Also, contrary to Plaintiff's contention, the ALJ did rely on medical evidence from the time after January 7, 1996.[3]

16. The January 1996 onset date is more consistent with Plaintiff's work history. Ms. Miller worked as a short order cook as a light duty alternative to the heavier work she had done in the past which involved more lifting and bending, and thus more strain on her back. Although the ALJ used this job interval as a basis to deny disability, Plaintiff's choice of an alleged onset date (the date she contends she could no longer work) is more in line with the regulation's

---

[2] I make this finding notwithstanding the residual functional capacities that stated Plaintiff has an ability to do sedentary work. These reports did not address Plaintiff's nonexertional impairment of pain. Thus, they cannot be said to be inconsistent with credible allegations of a significant pain impairment (both before and after January 1996) which justify remand.

[3] See e.g.: Dr. Ross' report from January 1996 (Tr. at 284-85); Dr. Romanik's report from February 1996 (Tr. at 120-27); Dr. Diskant's report from February 1996 (Tr. at 261); and Dr. Sloan's reports from January 1996 and April 1996 (Tr. at 261 and 256, respectively.)

5

definition of the term.

17. I find that Plaintiff's alleged onset date is correctly stated as January 7, 1996 and also that in this case the medical evidence pre-dating Plaintiff's alleged onset date is relevant to Plaintiff's claim for disability.

**Second Alleged Error**

18. Plaintiff next alleges that the ALJ mischaracterized the issue and erred in his findings regarding claimant's severe impairments. Specifically, Plaintiff alleges that the ALJ entirely disregarded Ms. Miller's severe carpal tunnel syndrome which was causing significant limitation in the use of her right arm.

19. The record contains reports from several physicians, Dr. Sloan (Tr. at 258), Dr. Drucker (Tr. at 290-91), Dr. Ross (Tr. at 288), Dr. Blessum (Tr. at 294-97), addressing Ms. Miller's carpal tunnel impairment. For example, Dr. Blessum described Plaintiff's self-reported symptoms as "morning stiffness [and] night awakening with a pins and needles feeling in the hand, involving the thumb and index finger." Tr. at 294.

20. Dr. Drucker reported Plaintiff as complaining that the pain radiated "up the dorsum of the forearm to the dorsum of the shoulder." Tr. at 291. Despite this impairment, however, Dr. Sloan opined that Plaintiff could return to work, with a lifting restriction of anything greater than 20 pounds. Tr. at 256. This case should be remanded for the ALJ to take into consideration the effects, if any, on Plaintiff's ability to work and, if necessary, to obtain the services of a vocational expert ("VE").

**Third Alleged Error**

21. Plaintiff next alleges that the ALJ failed to consider all of claimant's severe impairments, specifically that the ALJ relied solely on the findings of Dr. Diskant. Plaintiff contends that Dr. Diskant evaluated Plaintiff only for her back injury, and thus ignored her other impairments.

22. Without addressing the scope of Dr. Diskant's assessment, I find that the ALJ did take into account other medical reports, e.g., those of Dr. Sloan and Dr. Romanik, which he found to be consistent with Dr. Diskant's report. Tr. at 45-46. The ALJ also devoted two full pages to an accounting of various other medical reports, Tr. at 42-44, and considered Plaintiff's other impairments, based on these various reports. Further, at the hearing, the ALJ's questions to Plaintiff were not limited to her back problem and her testimony was referred to in the ALJ's decision. See Campbell v. Bowen, 822 F.2d 1518, 1521 (10th Cir. 1987)(ALJ's consideration of testimony in combination with discussion of various impairments sufficient to demonstrate the considered combined effect).

23. The ALJ started out the evaluation process set out in the decision by reciting various impairments cited by Plaintiff. Tr. at 45. However, he did not mention carpal tunnel syndrome, which is documented in medical reports in the record and which I found to have been disregarded. See discussion, above. Because most of these reports were generated subsequent to January 1996, remand is warranted in order to allow the ALJ to consider this impairment along with Plaintiff's other alleged impairments.

**Fourth Alleged Error**

24. Plaintiff contends that the ALJ erred in adopting the findings of Dr. Romanik, the

7

DDS reviewer. The basis for Plaintiff's position is that the opinion of Dr. Diskant, as the treating physician, should be accorded deference over non-treating physicians. See Reid v. Chater, 71 F.3d 372 (10th Cir. 1995). While Plaintiff does not dispute that Dr. Romanik's findings are to be considered expert opinion evidence, see SSR 96-6p (findings of fact made by State agency physicians regarding the nature and severity of an individual's impairment must be treated as expert opinion evidence of nonexamining sources), she contends that the ALJ incorrectly chose to rely on Dr. Romanik's report which was inconsistent with that of Dr. Diskant.[4]

25. I find no error here because I do not find one report to be in conflict with the other. Dr. Diskant reviewed Ms. Miller's medical records in October 1995 and he ordered further diagnostic testing as well as an independent medical evaluation ("IME") and a functional capacity evaluation. Tr. at 249. She was seen the following month for an IME in which Dr. Diskant stated that she could continue working as a short order cook, that she should be permanently confined to sedentary work and not lift over 10 pounds occasionally. Tr. at 247.

26. Dr. Diskant also performed a functional assessment in February 1996 in which he stated that Plaintiff was able to sit or stand for 4 to 6 hours out of an 8-hour day, walk for 2 to 3 hours and lift up to 10 pounds. Tr. at 252. This is not altogether inconsistent with Dr. Romanik's findings, which state that Ms. Miller can sit, stand or walk for 6 hours out of an 8-hour work day and lift up to 10 pounds frequently and 20 pounds occasionally. Tr. at 121.

---

[4] I do not address, but do point out, the inconsistency of Plaintiff's own position, as pointed out by Defendant. In the previous allegation of error Plaintiff attacked Dr. Diskant's opinion, but now alleges that the ALJ erred by *not* relying on Dr. Diskant's report, and instead adopting Dr. Romanik's findings.

8

27. Both reports conclude that Plaintiff has the ability to perform the physical requirements of sedentary work.[5] The fact that Dr. Romanik felt that her capabilities slightly exceeded those Plaintiff was found to have in Dr. Diskant's report does not affect the final result: that she can physically perform sedentary work. I find no error on this ground.

**Fifth Alleged Error**

28. Plaintiff alleges that the ALJ erred in his assessment of the credibility of pain complaints. The ALJ found that Ms. Miller's subjective allegations of disabling pain were not supported by "observable manifestations." Tr. at 51. He determined that, based on her daily activities and relief obtained through medication and treatment, her pain was mild, occasional and of short duration. Tr. at 48.

29. Regulations require that the ALJ must investigate all avenues presented that relate to subjective complaints, including nature, location, onset, duration, frequency, radiation and intensity of pain; aggravating factors, adverse side effects of medications, treatment, other than medication, for relief of pain, functional restrictions; and claimant's daily activities. SSR-88-13; see Luna v. Bowen, 834 F.2d 161, 166 (10th Cir. 1987). The ALJ used the correct legal standard, but I find that the noncredibility determination was not based on substantial evidence.

30. For one thing, the ALJ pointed to a list of "observable manifestations" which, if present, would indicate the presence of pain (e.g., muscle spasm, swelling, premature aging,

---

[5] I find, however, that there is some merit to Plaintiff's challenge to Dr. Diskant's assessment in that an ability to sit only 4 hours a day total out of an 8-hour day does not constitute an ability to perform the physical requirements of sedentary work. See SSR 83-10; 20 C.F.R. § 404.1567(a) (sedentary work involves lifting no more than ten pounds at a time, no more than two hours of walking and standing a day, and a total of six hours of sitting a day).

9

neurological dysfunctions or deteriorations, weight loss due to appetite), but which he found to be entirely absent in Plaintiff's case.[6] While the presence of such objective findings would certainly bolster a claimant's subjective complaints of pain and while a claimant's subjective complaint of pain is by itself insufficient to establish disability, see Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir.1990), in this case, I find little evidence to support the ALJ's finding of noncredibility.

31. The fact that the objective medical evidence alone did not suggest the presence of severe pain does not necessarily preclude a finding of credible subjective complaints of pain. Social security regulation 96-7p states that "because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record."

32. To be disabling, "pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." Brown v. Bowen, 801 F.2d 361, 362-63 (10th Cir. 1986). In this case, the ALJ's finding that Plaintiff's pain was mild, occasional and of short duration is not supported by the evidence. The record contains some instances showing that Plaintiff acquired minor relief from exercise and treatment Tr. at 181, 185, 178. On the other hand, the record contains numerous references to Plaintiff's complaints of pain which appears to have been, for the most part, unalleviated by medication or treatment and of significant severity. See e.g., Tr. at 229, 232, 230, 244-247, 265, 288, 273.

33. The ALJ also evaluated Ms. Miller's ability to perform daily activities in the

---

[6] Actually, the record indicates the present at some point of muscle spasms. Tr. at 192.

credibility analysis and concluded that she could "clean, cook, shop and care for her personal needs." Tr. at 48. The ALJ may not rely on minimal daily activities or the sporadic performance of household tasks or work as substantial evidence that a claimant does not suffer disabling pain. Thompson, 987 F.2d at 1489.[7]

34. Also, the evidence in the record does not support this finding. At the hearing, Plaintiff was asked:

> Q: How do you do with taking care of things around the house? Are you able to do all your housework and so forth?
> A: No, my children help me with that.

Tr. at 68. Similarly, Plaintiff's written statements on disability applications and daily activity reports indicate that she has difficulty carrying out household chores and needs help from her family in order to do them. Tr. at 96, 108-09. Plaintiff stated that she no longer drives or engages in any hobbies. Tr. at 63, 65.

35. I note that the functional assessments done by Dr. Ross, Tr. at 284-85, Dr. Diskant, Tr. at 252, Ms. Gove, Tr. at 217, and Dr. Romanik, Tr. at 120-127 indicate a physical ability to perform sedentary work, and suggest that Plaintiff return to work. While I find no error in the ALJ's reliance on these reports to conclude that Plaintiff can perform sedentary work, I find that Plaintiff's nonexertional impairment (assuming her subjective complaints are found to be credible on remand) was not taken into account in the ALJ's step five inquiry. A determination that Plaintiff's pain is found to significantly affect her ability to perform the full range of sedentary jobs

---

[7] The ALJ included Ms. Miller's work activity in 1995 and 1996 as a short order cook as evidence of noncredibility. Tr. at 48. However, as Plaintiff points out, she changed to this lighter duty work after her back injury. She alleges an onset of disability *after* she could no longer perform even this lighter level of work.

11

would require a VE consult and preclude reliance on the grids.

36. The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner. See <u>Sisco v. U.S. Dept. of Health & Hum. Serv.</u>, 10 F.3d 739, 741 (10th Cir. 1993). Further, subjective measures of credibility are peculiarly within the judgment of the ALJ. <u>Huston v. Bowen</u>, 838 F.2d 1125, 1132 (10th Cir.1988). Thus, I make no ultimate finding regarding Plaintiff's credibility.[8] Instead, I recommend remanding this case for an additional credibility inquiry. If Plaintiff's complaints are found to be credible on remand, the ALJ should consult a VE to ascertain how these symptoms affect the work base.

**Sixth Alleged Error**

37. Last, Plaintiff alleges that the ALJ erred in finding that claimant could perform a full range of sedentary work and in mechanically applying the grids at § 201.28. Given Plaintiff's nonexertional impairment of pain possibly imposing a significant limitation on her ability to work, the case should be remanded so that the ALJ can obtain the services of a VE instead of relying on the grids. See <u>Williams v. Bowen</u>, 844 F.2d 748 (10th Cir. 1988) (citations omitted) (since nonexertional limitations are not factored into the grids but must be taken into account in determining a claimant's RFC, the grids cannot be applied conclusively if a claimant has nonexertional limitations that significantly limit his "ability to perform the full range of work in a particular RFC" category on a sustained basis); <u>see also</u> <u>Thompson v. Sullivan</u>, 987 F.2d at 1487

---

[8] The ALJ also found that Plaintiff "exaggerates her allegations of pain" and "prevaricates her symptoms and description of pain." <u>Tr. at 49</u>. Because it has been recognized that "some claimants exaggerate symptoms for purposes of obtaining government benefits, . . . deference to the factfinder's assessment of credibility is the general rule." See <u>Frey v. Bowen</u>, 816 F.2d 508, 517 (10th Cir. 1987); <u>Broadbent v. Harris</u>, 698 F.2d 407, 413 (10th Cir. 1983).

12

(if the claimant's nonexertional limitations are significant enough to reduce further her work capacity, the ALJ may not rely upon the grids but instead must give full consideration to all relevant facts, including vocational expert testimony if necessary, in determining whether the claimant is disabled).

38. In addition, VE testimony is warranted where there is some question concerning Plaintiff's ability to sit for prolonged periods of time. Here the ALJ expressly adopted the findings contained in Dr. Diskant's functional assessment which presents exactly that question. See n. 5, above; Ragland v. Shalala, 992 F.2d 1056, 1059 & n.4 (10th Cir. 1993) ("where a claimant cannot sit or stand for prolonged periods of time, the ALJ must consult a vocational expert before making a determination . . . [E]ven where alternation of position is a possibility, the ALJ must consult a vocational expert before making a determination at step five, relying on the grids for light or sedentary work is inappropriate").

39. Remand is also justified to further consider the effect of Plaintiff's carpal tunnel syndrome. See discussion, above (Second Alleged Error). The Secretary must consider all relevant medical evidence of record in reaching a conclusion as to disability. Baker v. Bowen, 886 F.2d 289, 290 (10th Cir. 1989). Although the ALJ questioned Ms. Miller about this problem, Tr. at 67, neither the impairment nor the medical reports related to this impairment factored into the ALJ's findings.

40. Most unskilled sedentary jobs "require good use of the hands and fingers for repetitive hand-finger actions." SSR 83-10; SSR 96-9p. Loss of fine manual dexterity has greater adjudicative significance as the person's exertional RFC decreases and narrows the sedentary and light ranges of work much more than it does the medium, heavy, and very heavy

13

ranges of work. SSR 85-15. Ms. Miller testified that carpal tunnel syndrome has affected her ability to write so that she cannot write for longer than a few minutes at a time, and that she loses her grip. Tr. at 63.

41. Medical reports from Dr. Drucker and Dr. Blessum indicate that Plaintiff was having right hand pain and numbness and was obtaining no relief from treatment (splints, casts) or medication. Tr. at 290-91; 294-97. A functional capacity assessment by Rehabilitation and Occupational Medicine done in October 1996 stated that while Plaintiff could work in a sedentary capacity, she was restricted from any repetitive movements with her right arm and wrist.

42. Even using the earlier onset date of March 1995, the ALJ should have considered this medical evidence, since it was within Plaintiff's insured period. See Talbot v. Heckler, 814 F.2d 1456, 1461 (10th Cir.1987), cited in Owen v. Chater, 913 F.Supp. 1413, 1418 (D.Kan. 1995) (the substantiality of the evidence must take into account whatever in the record fairly detracts from its weight). On remand, the ALJ should consult a VE to obtain information on whether the degree of Plaintiff's carpal tunnel impairment erodes the sedentary work base. See SSR-85-15 (the varying degrees of loss which can occur may require a decision-maker to have the assistance of a VE).

43. In sum, I find (1) that the ALJ applied an incorrect onset date to justify an incorrect decision; (2) that the ALJ mischaracterized the issue and erred in his findings regarding claimant's severe impairment of carpal tunnel syndrome; (3) that the ALJ failed to consider all of claimant's severe impairments; (4) that the ALJ did not err in adopting the findings of Dr. Romanik, the DDS reviewer; (5) that the ALJ erred in his assessment of the credibility of Plaintiff's pain complaints; and (6) that the ALJ erred in finding that claimant could perform a full range of

sedentary work and in mechanically applying the grids.

**Recommendation**

I recommend that Plaintiff's Motion to Reverse and Remand for a Rehearing **[docket # 7]** be GRANTED in that this matter should be remanded to the Commissioner in order to perform the following: (1) use January 7, 1996 as the alleged onset date; (2) conduct another credibility inquiry; and (3) obtain a VE consult following this credibility determination to consider Plaintiff's carpal tunnel impairment, Plaintiff's postural limitations and, based on the outcome of the credibility inquiry, to ascertain how Plaintiff's nonexertional impairment of pain affects a sedentary work base. Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

*[signature]*
UNITED STATES MAGISTRATE JUDGE